UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y
★ APR 27 2009 ★
BROOKLYN OFFICE

| | |
|---|---|
| LEWIS RODRIQUEZ,<br><br>Plaintiff,<br><br>-against-<br><br>THE CITY OF NEW YORK, JIM ROSADO, ALAN LAM, LIZA DUPONT<br><br>Defendants | ECF CASE<br><br>COMPLAINT AND DEMAND FOR JURY TRIAL |



09 1714

VITALIANO, J.

AZRACK, M.J.

**PRELIMINARY STATEMENT**

1. This is an action for money damages brought pursuant to the Civil Rights Act of 1871, 42 U.S.C. §§ 1983 and 1988 for the defendants' commissions of acts under color of law in violation of plaintiff's rights under the Fourth and Fourteenth Amendments to the Constitution of the United States and the laws and Constitution of the State of New York.

**JURISDICTION**

2. This action arises under the Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. §§ 1983 and 1988.

3. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331, 1343(3) and (4).

**VENUE**

4. Venue is proper pursuant to 28 U.S.C. § 1391 (b) in that, *inter alia*, the events giving rise to the claim occurred in the Eastern District of New York.

**JURY DEMAND**

5. The plaintiff demands a trial by jury on each and every one of his claims as pled

herein.

## PARTIES

6. Plaintiff LEWIS RODRIQUEZ is a citizen of the United States and a resident of Kings County.

7. Defendant THE CITY OF NEW YORK (the "City") is a municipal corporation within the State of New York.

8. The New York City Police Department (the "NYPD") is the department of the City responsible for, among other functions, arresting persons for offenses and maintaining custody over such persons prior to their initial appearance in court. At all times relevant hereto, the NYPD, together with the City, was responsible for the policy, practice, supervision, implementation, and conduct of all NYPD matters and was responsible for the appointment, training, supervision, and conduct of all NYPD personnel. In addition, at all relevant times, the NYPD, together with the City, was responsible for enforcing the rules of the NYPD, and for ensuring that NYPD personnel obeyed the Constitutions and laws of the United States and of the State of New York.

9. At all relevant times herein, defendant JIM ROSADO, was a police officer employed by the NYPD and was acting in the capacity of agent, servant and employee.

10. At all relevant times herein, Defendant Rosado was stationed at Brooklyn North Narcotics Division under command 547.

11. Defendant Rosado's shield number is 7117.

12. At all relevant times herein, defendant ALAN LAM, was a police officer employed by the NYPD and was acting in the capacity of agent, servant and employee.

13. At all relevant times herein, defendant Lam was stationed at Brooklyn North

Narcotics Division under command 547.

14. Defendant Lam's shield number is 586.

15. At all relevant times herein, defendant LIZA DUPONT, was a police officer employed by the NYPD and was acting in the capacity of agent, servant and employee.

16. At all relevant times herein, defendant Dupont was stationed at Brooklyn North Narcotics Division under command 547.

17. Defendant Dupont's shield number is 16135.

18. At all times relevant herein, defendants Rosado, Lam, and Dupont were each acting under color of state law in the course and scope of his and her duties and functions as an agent, servant, employee and officer of the City and otherwise performed and engaged in conduct incidental to the performance of his lawful functions in the course of his duties. Defendants Rosado, Lam and Dupont were acting for and on behalf of the City of New York at all times relevant herein with the power and authority vested in them as officers, agents and employees of the City of New York and incidental to the lawful pursuit of their duties as officers, employees and agents of the City of New York.

## STATEMENT OF FACTS

19. In the evening of March 31, 2008, at approximately 8:15pm, plaintiff Lewis Rodriquez was legally in the vicinity of Pacific Street between Eastern Parkway and Sackman Street. Plaintiff was approached by defendants Police Officers Jim Rosado, Alan Lam and Liza Dupont. Plaintiff was breaking no law.

20. Police Officer Rosado threw plaintiff against the wall of a lobby in an apartment building on Pacific Street off Eastern Parkway. All three defendant police officers searched his clothes and found no contraband.

21. At this point defendants Lam and Dupont held plaintiffs arms while defendant Rosado forcibly removed plaintiff's pants and underwear leaving plaintiff naked from the waist down in the lobby of this apartment building. He was further forced to bend and squat in the nude. Several residents of the building observed this including a young girl who screamed while this illegal strip search was going on.

22. Mr. Rodriquez was then handcuffed and lead to a waiting police van. He remained handcuffed in the police van as it drove around for approximately 6 more hours while he observed the defendant officers make several other arrests. Plaintiff complained that he was losing circulation to his hands because he was too tightly handcuffed. His complaints were ignored by defendant officers.

23. Mr. Rodriquez was eventually taken to the 73rd Precinct and placed in a holding cell.

24. Mr. Rodriquez was then directed by the defendant officers to remove his clothing one piece at a time and to pass it to the officer, until he was completely undressed.

25. When he was completely undressed, the officer directed Mr. Rodriquez to turn around so that his backside faced the officer, and then was ordered to "bend over" and spread his buttocks apart with his hands.

26. Mr. Rodriquez complied with these orders, as he did not believe he had a choice.

27. Mr. Rodriquez was then allowed to dress and held overnight at the 73rd Precinct awaiting transport to Central Booking in Downtown Brooklyn. He was not allowed to drink or eat anything while being held at the 73rd Precinct.

28. While Mr. Rodriquez was awaiting arraignment, the defendant officers who arrested plaintiff met with a prosecutor employed by the Kings County District Attorney's

Office.

29.     The defendant officers falsely stated to the prosecutor that plaintiff committed the crime of possession of a controlled substance. In defendant officer's fictitious version of events, Mr. Rodriquez, while at Pacific Street and Eastern Parkway possessed "crack cocaine residue."

30.     The Kings County District Attorney's Office, based solely on the defendant officers' false statements, filed charges against the defendant.

31.     Mr. Rodriquez was finally arraigned in Kings County Criminal Court approximately 48 hours later and charged under Kings County docket number 2008KN024643 with one count of Criminal Possession of Controlled Substance in the Seventh Degree (N.Y. Penal Law § 220.03). Plaintiff was released on his own recognizance.

32.     Over the next year Mr. Rodriquez made multiple court appearances in Kings County Criminal Court.

33.     On March 18, 2009, the case against Mr. Rodriquez was dismissed pursuant to N.Y. Crim. Pro. Law § 30.30 for the Kings County District Attorney's Office failure to prosecute it.

34.     Mr. Rodriquez denies possessing crack cocaine, or any other controlled substance, on March 31, 2008.

35.     The NYPD has a formal policy, contained in its Patrol Guide, by which it authorizes strip searches only in situations where "the arresting officer reasonably suspects that weapons, contraband, or evidence may be concealed upon the person or in the clothing in such a manner that they may not be discovered by the previous search methods. Other factors that should be considered in determining the necessity for a strip search include, the nature of the crime (serious violent felony), arrest circumstances,

subject's reputation (extremely violent person), act of violence, and discoveries from previous searches." Additionally, according to information and documents made available on the Criminal Complaint Review Board's website (www.nyc.gov/ccrb), an NYPD directive, limiting and clarifying the strip search policy, was issued on May 13, 2004 (*see* http://www.nyc.gov/html/ccrb/pdf/nypdssdir.pdf).

36. This notwithstanding, on information and belief, the NYPD has *de facto* policy and practice of strip-searching persons for reasons other than those specified in the Patrol Guide or NYPD directives.

37. As a result of defendants' actions, plaintiff suffered loss of freedom for 48 hours and was deprived of his liberty from March 31, 2008 to March 18, 2009. Moreover, plaintiff suffered pain, injuries to his wrists, emotional distress, mental anguish, fear, embarrassment, humiliation and anxiety.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### 42 U.S.C. § 1983 Against the Individual Defendants

38. All other paragraphs herein are incorporated by reference as though fully set forth.

39. By arresting, detaining and strip searching plaintiff, defendants Rosado, Lam and Dupont engaged under color of law in the violation of plaintiff's rights under the Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983 to be free from unreasonable searches and seizures, false arrest and imprisonment and malicious prosecution.

## SECOND CAUSE OF ACTION
## 42 U.S.C. § 1983 Against the City of New York

40.     All other paragraphs herein are incorporated by reference as though fully set forth.

41.     Municipal liability for the violations of plaintiff's Fourth and Fourteenth Amendment rights rests upon the grounds set forth below.

42.     At all times material to this complaint, the defendant City, acting through the NYPD and the individual defendants, had *de facto* policies, practices, customs and usages which were a direct and proximate cause of the unconstitutional conduct alleged herein.

43.     At all times material to this complaint, the defendant City, acting through the NYPD and the individual defendants, had *de facto* policies, practices, customs and usages of failing to properly train, screen, supervise or discipline employees and police officers, and of failing to inform the individual defendants' supervisors of their need to train, screen, supervise or discipline said defendants. The policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

WHEREFORE, the plaintiff requests that this Court:

1.     Assume jurisdiction over this matter;

2.     Award compensatory and punitive damages to plaintiffs against the defendants, jointly and severally;

3.     Award plaintiffs reasonable costs, disbursements and attorneys' fees; and

4.	Grant any other relief the court deems appropriate.

Dated:  New York, New York
        March 31, 2009

							Respectfully submitted,

							Christopher Wright

							/s/ [signature]

							By:  Christopher Wright, Bar number CW8079
							Attorney for Plaintiff
							305 Broadway, Suite 1400
							New York, New York  10007
							wrightlawnyc@gmail.com